IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHRISTOPHER J. WINDSOR,

    Plaintiff,

v.                                  CASE NO. 5:13cv38-RH/CJK

CHRIS EAVES et al.,

    Defendants.

_____/

## ORDER GRANTING A NEW TRIAL

This is a Fourth Amendment wrongful-arrest and excessive-force case. The jury returned a verdict that was against the great weight of the evidence on liability and a damages award that cannot be explained on any view of the facts. The occasions when a verdict can properly be set aside based on the great weight of the evidence are few. This is the rare case when the verdict should be set aside.

I

The plaintiff is Christopher J. Windsor. The defendants are four officers with the Bay County Sheriff's Department: Chris Eaves, Antonio Jones, Bryan Chavers, and Mike McCrary. Mr. Eaves investigated an anonymous tip that a beat-up white van followed a woman home from a pool hall. Several days later a

white van—though not a beat-up van—was parked at the pool hall.  Mr. Eaves came to believe the driver of the van might be the subject of an old warrant. Whether there was any basis for that belief is disputed.  As it turns out, the subject of the old warrant—if indeed there was an old warrant—was Mr. Windsor's long-deceased brother.

The actual driver of the not-beat-up white van was Mr. Windsor.  Mr. Windsor was not the subject of any warrant and had done nothing wrong.  The van belonged to Mr. Windsor's recently deceased father, who also was not the subject of any warrant and had done nothing wrong.  After watching the first half of the college football national-championship game, Mr. Windsor left the pool hall and entered the white van, intending to drive home.  The officers rushed the van, forcefully putting Mr. Windsor on the ground.  The entire maneuver, from the officers' appearance to the time when Mr. Windsor was on the ground, took less than 15 seconds.  This is now undisputed, because the pool hall's security camera recorded the event.

The officers were unaware that the event had been recorded.  They charged Mr. Windsor with resisting arrest.  Eventually, after the video surfaced, the charge was dropped.  But in connection with the prosecution, before the video surfaced, the officers gave testimony flatly inconsistent with the video.  Mr. Eaves testified, for example, that Mr. Windsor was repeatedly asked to roll down his window but

refused, that Mr. Windsor was repeatedly asked to step out of the van and to provide his driver's license but refused, that during this process Mr. Eaves explained to Mr. Windsor that the reason for the stop was that the officers were looking for a fugitive, that when Mr. Eaves opened the door Mr. Windsor tried to close it, that when officers removed Mr. Windsor from the van they stood him up against the side of the van for about a minute, and that the officers put Mr. Windsor on the ground only after all this. Mr. Eaves testified that four to five minutes elapsed before the officers put Mr. Windsor on the ground. ECF No. 169 at 148-54.

Mr. Windsor suffered a substantial neck injury as a result of this event and eventually underwent surgery. His medical expenses—the overwhelming majority of which were for the surgery—totaled roughly $156,000.

Mr. Windsor filed this action alleging claims under the Fourth Amendment and 42 U.S.C. § 1983. He asserted both that the arrest was wrongful and that the officers used excessive force. The officers moved for summary judgment based on qualified immunity. The court denied the motion. The officers appealed. The United States Court of Appeals for the Eleventh Circuit affirmed in an unpublished opinion.

The case proceeded to trial. Nothing that occurred during the trial itself—no evidentiary ruling, no jury instruction, no improper testimony or comment—

provides any basis for attacking the verdict. To the point at which the case was turned over to the jury, this was a full and fair trial.

Early in its deliberations, the jury asked, "If money is awarded, where will the funds come from? Will it be divide [sic] between the defendants or paid by the Bay Co Sheriff [sic] Office?" ECF No. 155 at 1. With the consent of both sides, I responded that if its verdict was for Mr. Windsor, the jury should determine damages based on the instructions given earlier and " should not consider how any award of damages will be paid." *Id.* at 2.

The verdict form asked specific questions. The jury returned a verdict with answers making the following findings. Mr. Eaves had reasonable suspicion that the driver of the van might be named in an outstanding warrant. The officers reasonably attempted to investigate the van driver's identity before removing him from the van and putting him on the ground. There was probable cause to believe Mr. Windsor committed the offense of resisting an officer's lawful commands. Excessive force was used against Mr. Windsor. Mr. Eaves was responsible for the use of excessive force but the other officers were not. Mr. Windsor incurred damages for reasonable medical expenses in the amount of $62,000—well below half the cost of the surgery. And Mr. Windsor suffered zero damages for bodily injury—that is, zero damages for pain and suffering or physical impairment.

Neither side asserted, before the jury was discharged, that the verdict was inconsistent. The clerk entered judgment on the verdict: for Mr. Windsor against Mr. Eaves in the amount of $62,000; but in favor of the other defendants on the claims against them.

Mr. Windsor filed a post-trial motion for a new trial on damages or to alter or amend the judgment. The motion has been fully briefed.

## II

Federal Rule of Civil Procedure 59(a) allows a district court to grant a new trial after a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court." So a district court has discretion to grant a new trial when "a jury's 'verdict is against the great, not merely the greater weight of the evidence.' " *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1145 (11th Cir. 2009) (quoting *Redd v. City of Phenix City*, 934 F.2d 1211, 1214-15 (11th Cir.1991)). The Eleventh Circuit has more than once upheld an order granting a new trial. *See, e.g.*, *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1303-04 (11th Cir. 2007); *Mekdeci ex rel. Mekdeci v. Merrell Nat. Labs.*, 711 F.2d 1510, 1513-15 (11th Cir. 1983). Indeed, the Eleventh Circuit and its predecessor the Old Fifth have more than once *reversed* an order that *denied* a new trial. *See, e.g.*, *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951,

960-62 (11th Cir. 2014); *Hatfield v. Seaboard Air Line R.R. Co.*, 396 F.2d 721, 724 (5th Cir. 1968).

Appellate review of an order granting a new trial is "extremely stringent" to "ensure[] the district court does not simply substitute its own credibility choices and inferences for the reasonable choices and inferences made by the jury." *Auto-Owners*, 571 F.3d at 1145. Even so, a jury's verdict is not, and has never been, beyond all review. *See* 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2806 (3d ed. 2012) ("[I]t has been said that the granting of a new trial on the ground that the verdict is against the weight of the evidence involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all the reasons which inhere in the integrity of the jury system itself.") (internal quotation marks omitted); *id.* ("If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that the judge will grant a new trial.").

I have presided over some number of jury trials in the hundreds. This will be the second time I have granted a new trial based on the great weight of the evidence. I would not be doing my job if I let this verdict stand.

III

Two of the jury's findings cannot be squared with any view of the evidence. The findings are indefensible.

A

First, the jury put Mr. Windsor's damages for medical expenses at $62,000. No evidence or reasonable theory supports the calculation. The actual medical expense for Mr. Windsor's neck surgery was well over twice that amount. No evidence called into question the reasonableness of that expense. Indeed, the defendants did not question, and still have not questioned, the fact that Mr. Windsor actually underwent the surgery and reasonably incurred expense for the surgery far in excess of $62,000.

The surgery was either caused by the use of excessive force or it was not. If the excessive force caused the surgery, Mr. Windsor suffered damages for medical expense far in excess of $62,000. If the excessive force did not cause the surgery, Mr. Windsor suffered damages for medical expense far below $62,000. So the damages for medical expense were either far more or far less than the amount the jury awarded.

To be sure, Mr. Windsor had a preexisting neck injury. Based on the law and the instructions properly setting out the law, the jury could have attributed some of Mr. Windsor's condition to the preexisting injury and some to the

aggravation caused by the excessive force—that is, the jury could have concluded the injury was divisible. But no evidence suggested the *surgery itself* was divisible, and common sense indicates it was not. No evidence suggested that any lesser form of surgery existed that would have been sufficient if not for the pre-existing injury—or how much any such surgery would have cost, if, contrary to the evidence and common sense, any such surgery were possible. In short, attributing part of the expense of the surgery to the preexisting injury and part to the excessive force necessarily resulted either from the jury's misunderstanding of the law or, worse, its decision to compromise—to award Mr. Windsor only a portion of the medical expense he reasonably incurred.

A possible—and in my view, likely—explanation of the jury's calculation is this. The plaintiff's attorney, in closing, suggested rounding the amount of medical expense to $150,000. If five of the twelve jurors wished to award $150,000 but seven wished to award no amount at all, a simple quotient would produce an award of $62,500, which could be rounded down to $62,000. One cannot assume just from the inadequate award that the jury compromised, and one cannot assume just from the arithmetic that this was a quotient verdict. But here there is more: the absence of any legitimate basis for the jury's determination of the amount of damages and the other anomalies in the verdict discussed below. Nobody has suggested any other basis for the jury's calculation.

Case No.   5:13cv38-RH/CJK

That the medical award could be a quotient verdict—or even just the result of a less-sinister but nonetheless improper compromise designed to avoid the need for unanimity—is not essential to, but further supports, the conclusion that the verdict should be set aside. *See, e.g.*, *Mekdeci ex rel. Mekdeci v. Merrell Nat. Labs.*, 711 F.2d 1510, 1513-14 (11th Cir. 1983) ("If sufficiently persuasive indicia of a compromise are present, then the issues of liability and damages are inseparable and a complete new trial is necessary.").

B

Second, the jury awarded zero in damages for pain and suffering, despite the jury's conclusion that Mr. Windsor suffered excessive force and underwent surgery as a result. One cannot have major surgery and experience no pain and suffering. The jury's decision to award no amount for pain and suffering resulted either from the jury's misunderstanding of the law or, worse, its decision not to follow the law. Either way, the finding is indefensible.

The law of the circuit on this issue goes back at least to *Hatfield v. Seaboard Air Line Railroad Co.*, 396 F.2d 721 (5th Cir. 1968). There the jury in a bodily-injury case answered interrogatories like those at issue here. The jury found the defendant liable but awarded only nominal damages, despite undisputed evidence that the plaintiff suffered actual injuries and incurred medical expense. The district court denied a motion for a new trial, but the old Fifth Circuit reversed, holding

that a new trial on all issues was mandatory. *Id.* at 723-24. The decision is binding precedent. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981).

If, as the court held in *Hatfield*, a new trial was *mandatory* there based on the jury's award of only nominal damages, then a new trial is at least *permissible* here, based on the jury's award of no damages at all for pain and suffering.

Similarly, in *Collins v. Marriott International, Inc.*, 749 F.3d 951 (11th Cir. 2014), the jury in a wrongful-death case found the defendant liable but awarded no damages. The district court denied the plaintiff's motion for a new trial. The Eleventh Circuit reversed, concluding that the damages award was plainly inadequate and may have resulted from a compromise. *Id.* at 960-62. The same analysis applies here.

If, as the court held in *Collins*, a new trial was *mandatory* there based on the jury's failure to award damages and the risk of a compromise, then a new trial is at least *permissible* here, based on the jury's award of no damages at all for pain and suffering, the risk of a compromise or even a quotient verdict, and the other anomalies in this verdict.

Finally, in *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293 (11th Cir. 2007), the district court granted a new trial based on the jury's award of damages below any amount supported by the record. The Eleventh

Circuit upheld the decision to grant a new trial, agreeing that an additur could not be given and that the damages award was insufficient on any view of the evidence. *Id.* at 1303-04.  Here, as there, the indefensible calculation of damages is a permissible basis for granting a new trial, especially when coupled with the other anomalies in this verdict.

IV

The jury's question about who would pay any damages further undermines confidence in the verdict.  For a jury to begin its deliberations by asking who will pay any award is, in most cases, mildly disconcerting but no ground for alarm. Such an inquiry, without more, does not call into question the validity of a verdict. Here, though, in light of the jury's indefensible calculation of medical damages and its failure to award any amount for pain and suffering, the jury's question provides a further reason to question whether the jury was faithful to its duty to render a unanimous verdict and to find the facts based on the evidence, without fear or favor.

Jury questions can properly be considered in deciding whether to uphold a verdict.  *See, e.g., Collins*, 749 F.3d at 962 (reversing the district court's denial of a new trial and concluding that "the jury's question to the judge—asking whether it could find liability but award zero damages—suggests that some members of the jury may have gone along with a finding of liability only if accompanied by an

award of zero damages"); *Hatfield*, 396 F.2d at 723 (reversing the district court's denial of a new trial partly because, as apparently shown by a jury question, "there was some confusion on the part of the jury with regard to the contributory negligence issue").

V

This verdict can best be characterized as a general verdict with special interrogatories. *See* Fed. R. Civ. P. 49(b); *Mason v. Ford Motor Co.*, 307 F.3d 1271, 1275 (11th Cir. 2002). An objection that such a verdict is internally inconsistent is ordinarily waived if not raised when the verdict is returned, before the jury is discharged. *Mason*, 307 F.3d at 1275-76.

Here, though, the problem is not just that the verdict is inconsistent. The verdict is unsupported by any view of the evidence.

Perhaps it could be said that awarding no damages for pain and suffering is indefensible only on the view that the officers used excessive force. On that view, awarding no amount for pain and suffering would be inconsistent with the jury's finding of excessive force. But the assertion is strained and does not comport with any realistic view of the trial process. And the assertion, if accepted, would indicate that *Hatfield* and *Collins* were wrongly decided.

Moreover, even if the failure to award pain-and-suffering damages could be labeled merely inconsistent, the same cannot be said of the jury's award of $62,000

for medical expenses. On no view did Mr. Windsor suffer damages of $62,000 for medical expenses. So the $62,000 award is not just inconsistent with another part of the verdict; it is indefensible on any view of the evidence. Accepting the assertion that the objection to this part of the verdict was waived would indicate that *Millennium*, too, was wrongly decided.

VI

In other respects, too, the verdict is against the great weight of the evidence. The evidence was sufficient, though not by much, to allow the jury to find that the officers' encounter with Mr. Windsor began as an investigatory stop, not a pre-planned immediate arrest. The evidence was sufficient, though not by much, to allow the jury to find further that Mr. Windsor's response to the officers that night provided probable cause to arrest him for resisting a lawful order. But a verdict can be against the great weight of the evidence even when the evidence is sufficient to create a jury issue. Otherwise a trial judge would never have discretion to grant a new trial based on the great weight of the evidence.

To be sure, the Eleventh Circuit has sometimes said a district court cannot grant a new trial if the verdict is "supported by the evidence." *See, e.g.*, *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1145 (11th Cir. 2009). This can properly be understood to mean only that a new trial cannot be granted if there is enough evidence to defeat the conclusion that the great weight of the

evidence is to the contrary.  Any contrary view—any view that a new trial cannot be granted if the evidence is sufficient to go to the jury—would contravene hundreds of years of settled practice.  Rule 59(a) adopts that settled practice.  Leading commentators, including Professors Wright and Miller as quoted above, approve the settled practice.  And indeed, if a new trial could not be granted if the evidence was sufficient to go to the jury, then a new trial could never be granted based on liability issues; the choice would be only to uphold the verdict or grant judgment as a matter of law in favor of the other side.

The standard for granting a new trial is daunting, but this is the rare case in which the standard is met.  I reach this conclusion based on the jury's indefensible calculation of medical expenses, its award of no damages for pain and suffering, and its finding for Mr. Eaves on liability for the stop and arrest.  Each of these three grounds would be sufficient standing alone to support the grant of a new trial.

The more difficult question is whether to grant a new trial on the claims against the other three officers: Mr. Jones, Mr. Chavers, and Mr. McCrary.  A reasonable jury could find these officers relied on Mr. Eaves's assertion that there were grounds to effect a violent-fugitive arrest of the van's driver right at the outset.  A reasonable jury could find that these officers used a level of force that was appropriate for such an arrest.  If not for the remainder of the verdict, I would not grant a new trial on the claims against these officers.

But the remainder of the verdict cannot properly be ignored.  *See, e.g., Lucas v. Am. Mfg. Co.*, 630 F.2d 291, 293 (5th Cir. 1980) ("It is well settled that a new trial on part of the issues 'may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separate from the others that a trial of it alone may be had without injustice.' ") (quoting *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931)).  This jury did not follow the law.  In all likelihood, it compromised, possibly—even probably—reaching a quotient verdict on one element of damages, while inexplicably awarding zero damages on another element, contrary to the finding of liability against Mr. Eaves.  Exonerating the other officers might well have been part of the compromise.

We ordinarily presume that a jury followed the law, and we ordinarily uphold a verdict.  Here, though, one cannot have any confidence at all that the jury addressed the issues and unanimously resolved them on the merits.  The better course is to retry the entire case.

## VII

For these reasons,

IT IS ORDERED:

1. The motion for a new trial, ECF No. 166, is granted.

2. The motion for prevailing-party attorney's fees, ECF No. 161, is denied as premature.

3.  The retrial is specially set for September 27, 2016.  A party with a conflict must file a notice by August 12, 2016.  The trial will be moved to any other available date in 2016 if both sides so agree.  On request, the courtroom deputy clerk must work with the attorneys to identify available dates.

SO ORDERED on July 25, 2016.

s/Robert L. Hinkle
United States District Judge